The next case up is Domante v. Dish. Good morning, your honors. May it please the court. My name is Kaylin Steinkraut on behalf of the appellant, Mrs. Peri Domante, the consumer plaintiff below. Your honors, this appeal arises from Dish's breach of a settlement agreement that was intended to resolve years of prior credit reporting errors and violations of the Fair Credit Reporting Act. I'd like to highlight two points before turning to each specific claim. The first point is that Mrs. Domante is a victim of identity theft, and only one company has repeatedly invaded Mrs. Domante's private credit reporting information after repeatedly being notified about her The second point is that the legislative intent behind the Fair Credit Reporting Act is intended to protect Mrs. Domante from Dish's unfettered access to her private credit report. That's because Congress intended the Fair Credit Reporting Act to protect both the privacy and the accuracy of the most private financial information a consumer like Mrs. Domante has, her credit report. Your honors, the district court incorrectly granted summary judgment to Dish on three erroneous grounds. First, the district court applied a broad-brush permissible purpose standard under the Fair Credit Act to find that Dish did not violate the act when it obtained Mrs. Domante's credit reports in 2017 and in 2018, despite issues of fact precluding such a finding. Counsel, sorry, this is Robert Luck. I want to talk to you about that first issue before you go on to the second one. Do you agree with me in the abstract, forget the facts of this case for a moment, that in the abstract, it is a proper purpose under section 1681B for a person, in this case Dish, to obtain a credit report to verify who a customer is and to see if they are eligible for services? Yes, your honor. In the hypothetical... And right, it has to be because otherwise no company could ever seek a credit report to make sure that somebody is who they say they are and if they're eligible. I mean, the whole point is if you apply for a credit card, if you apply for services, if you apply for any sort of credit to buy a car or anything else, you need to be able to check to make sure that's the person and that they're eligible for that credit, right? That's correct, your honor. Okay, so let's go to the facts of this case. So here, as I understand it, somebody called Dish in January 2017, and let's just focus on January 2017, gave a different name, not your client's, gave a different address, not your client's, gave a different phone number, not your client's, and gave four digits of a social security number that could apply, as I calculate, to one in every 10,000 people in the United States of America, so multiplied by 300 million, and you get some number that's a lot. Is it not, under those circumstances, forget everything else, appropriate for a company to see if that person is who they say they are and whether they qualify? No, your honor, and there are several reasons for that. So first, the application that triggered the 2017 credit inquiry was not done by a call to Dish. It was in response to an application submitted online. Right, right, it was an online application. Correct, so every single application for Dish services over the five-year period that Dish repeatedly requested and obtained Mrs. Jomonte's information was submitted online, and the information that was included in that 2017 application was not just the last four correct digits of the social security number. There'd be no way for just the last four correct digits of a social security number. Well, counsel, I want you to forget everything else for a moment, but is it appropriate for a company to, when given a name not of your client, when given an address not of your client, when giving a telephone number not of your client, and giving the last four digits of a social security number that can apply to every one in 10,000 people in the United States of America, is that not appropriate for Dish to then verify who that person is and then to see whether they qualify for services? That's not the situation that we have here. Well, assume for the moment it is. Would that not be appropriate? Not if Dish had affirmative information showing that it did not have the individual's permission to request and obtain their consumer report. But how would Dish know? So as I understand it, for the person whose name that Dish received in the online application, they've never had anything regarding that person, right? That's not your client. Your client has a different name. That's incorrect, Your Honor. Dish has three reasons why it knew that it was Mrs. Domonte, and that's because... No, no, no. Counsel. Counsel. Counsel. We need to agree on what we have to agree on. Now, you can disagree with me on lots of things, but was it your client's name that was submitted on the online application? The correct first name? Yes, Your Honor. Really? It's your client's name? Yes, Your Honor. Perry was submitted online. If your client is Pamela Smith, and they said, and the application was Pamela Jones, is that your client's name? That's not the full name, but when she... It's not your client's name. Your name is your first, middle, and last name, right? Correct. It was her maiden name. Okay, so it wasn't her name. It was not her address, right? Correct. And it was not her phone number, right? Correct. Okay, so under those facts, how is the company supposed to know that five years ago, someone claiming your client said that my ID has been stolen and don't let anyone apply in my name? Because the pieces of information that were correct were enough to get the credit report from Equifax. Only one credit report was provided, and I think the piece of information that Your Honor is missing of Mrs. Domonte's correct identifiers that were used in every single application prior to 2017, including 2017, and including 2018, is her correct date of birth. That's because to get a credit inquiry, you need the correct date of birth. You need one of the correct names, first or last, and you need the correct social security number, whether it's the full nine or the last four. Those same identifiers have been used in every single application for DISH services, and every single application has been submitted online. Counsel, this is Lisa Branch. Let me ask you a question on that. You are not suggesting, forget about your client, but you are not suggesting that the way that DISH, generally speaking, conducts these online credit applications and then sends this information to a credit bureau, you're not suggesting that that would violate the statute for any other person. If I apply and I give my name, address, last four digits, DISH is entitled to ping my, the credit bureau with my information, correct? That's correct, Your Honor. So it's only under the unique circumstances here because of the preexisting relationship. You're not indicting wholesale the online application process of DISH, correct? That's correct. We are only indicting the specific process with respect to Mrs. Domonte in this unique set of circumstances, Your Honor. So then don't we have to come back to the settlement agreement? Not necessarily, Your Honor, and that's because the obligation on DISH under the Fair Credit Reporting Act is separate and stricter than the obligation on DISH from the settlement agreement. However, the settlement agreement does relate to DISH's knowledge, which is a requirement under the Fair Credit Agreement. You just said that DISH, in every circumstance, when it gets an online credit application, except for your client, it is entitled to do exactly what it did under the statute, correct? Correct, absent the unique situation here. So how is this not just all about the settlement agreement? That's because the legitimate business needs permissible purpose is an exception to the rule. It's not the rule. And I feel what is being missed is that the Fair Credit Reporting Act is intended to protect the privacy of Mrs. Domonte's consumer report. So regardless of the settlement agreement, we can look to the RAND case that was cited in the brief that held that prior dealings between the parties, regardless of the execution of a settlement agreement, can put a party like DISH on notice that it does not satisfy any permissible purpose to request and obtain the consumer report. So what does the settlement agreement add to your case? The settlement agreement adds to our case, and we contend that DISH signed away its settlement agreement in October of 2016. That's because no one disputes here that at the time of signing the settlement agreement, Mrs. Domonte no longer has the ability to open a DISH account. So there can be no legitimate business need to verify the identity and eligibility of someone that can never obtain DISH. Can you counsel how is an online computer system supposed to know it is your client when they're given the wrong name, the wrong address, the wrong telephone number, and only numbers that belong to one in every 10,000 Americans? There's only one person that the first name Perry, the last four digits of her Social Security number, and her date of birth identify. Yeah, but where all the other information is wrong, where it's Jane who's born on January 1st with these last four digits, how is that supposed to put someone on notice that it's not Jane so-and-so with the same four digits but a different number and was born on the same day who really wants DISH services? I mean, how is it not reasonable for DISH under those circumstances where they don't know for sure that it's your client to ask and to make sure, and then once they're sure, to say, no, no, no, we're not giving services? Well, DISH proved on January 29th, 2018, that it knew Mrs. Domonte's identifiers were being used on the application before it told the credit report. I thought it knew that somebody was trying, but it didn't know this particular one, this particular application online was someone trying to use her identifiers. Am I wrong? DISH did know that someone was using the same identifiers as had been used five days prior in an application for services, and DISH testified that it has the ability to manually input information into five of its account opening scrubs that can prevent a credit inquiry. DISH testified that it... Kelsey, can you tell me where in the settlement agreement DISH agreed to do the things you're talking about now? Yes, Your Honor. There are two main parts of the settlement agreement that confirm that DISH was not permitted to do a credit inquiry. First, the plain language of the settlement agreement confirmed the context and incorporated the prior fair credit reporting acts between the litigation between the parties. The first... Where's the language that says they can't do a credit check on the... Let's see your picture. And my time is close to expiring, but... No, wait, wait, wait. Counsel, counsel, we're asking you questions. Just answer the questions, and the courtroom deputy is not going to remind you about time. I'll remind you about time later. Answered good. The question that I had posed was where's the language in the settlement agreement that says that DISH can't use the social and check against the credit reporting bureau? While that express language is not in the plain language of the settlement agreement, DISH did agree to flag plaintiff's social security number in order to preclude any persons from attempting to obtain new DISH services by utilizing plaintiff's... Social security number. So DISH did flag the social, and DISH did prevent the opening of an account. So I guess I'm just looking for a place here where DISH has violated the language of the settlement agreement. Well, the comparison that comes to mind, Your Honor, is that you enter into an agreement with a home security system company... No, no, no, my question is where in the... Tell me the language specifically that DISH has breached. I mean, I want you to literally read the language and say this is what DISH was obligated to do, and DISH didn't do it. DISH was obligated to prevent the attempting to obtain new DISH services. Which, of course, counsel is absurd. Were you or your firm a party to negotiating the settlement agreement? Yes, Your Honor. How in the third ring of Hades is somebody obligated, and how are they able to prevent someone from attempting to obtain DISH service in her name? Well, DISH... Not from obtaining, but from attempting to. Your Honor, the grandfather check that prevented the January 29, 2018 credit inquiry... Did not, did not, did not prevent anyone from attempting to obtain new DISH services. Yes, it did, Your Honor, because it prevented a credit inquiry... No, they attempted to when they submitted the application. That was their attempt. It was an intent followed by an overt act. That's an attempt. Y'all negotiated a settlement agreement, which is impossible, which is absurd. DISH knew at the time of negotiating the settlement agreement that it was not only promising to prevent the obtaining of services or the opening of services. It was promising to prevent the attempting to obtain. Which is impossible, which is the impossibility exception to a contractual obligation. The law won't enforce impossibility... DISH has not presented the impossibility... Counsel, counsel, counsel, I'm speaking to you. The law, first year contracts, 101, will not enforce impossible promises. This is an impossible promise. DISH can't go out unless they go out, hire great investigators and arrest all these people, and then hypnotize them to forget the identifiers. They can't keep anybody from attempting to obtain DISH services in her name or utilizing her social security number. Am I wrong? How did they attempt? What DISH can prevent is that attempt processing through its own internal process to result in credit intrusion into Mrs. Doman's private... That's not what you negotiated and wrote down. You wrote down that DISH's obligation was to preclude any persons from attempting to obtain DISH services by utilizing her social security number. That's correct, Your Honor. And now you come to us and say you should read it differently in a way that will vindicate our cause of action for breach of contract. It should be read in the context in which the settlement agreement was entered into and incorporates by reference in the first two whereas paragraphs, acknowledgment that the entire purpose of the settlement agreement was to resolve the prior Fair Credit Reporting Act litigation between the parties, which litigation involved fraudulent inquiries and fraudulent accounts being opened as a result of those inquiries. DISH knew that at the time of entering into the settlement agreement, Mrs. Doman knew that at the time of entering into the settlement agreement... Counsel, let me ask you another question. The summary judgment filings in the district court were made under seal. The brief and appendices on appeal had been sealed. I'm not sure how we derive an opinion in this case or issue an opinion in this case. Who moved to seal the proceedings below and the proceedings in this court? Was that you? That was DISH, Your Honor. We did not object to it because... All right, wait, wait, wait. I'm not concerned about why you didn't object. Here's my question. Was their motion based on the fact that trade secrets or was it on the fact that... When I saw that, I thought, well, maybe there's a social security number or two in there. I don't understand what we're to do with a case in which everything relevant is sealed. Your Honor, DISH presented in the motion that it was for trade secret purposes because of the reference of their account opening procedures and how in-depth the briefs went on to that. But that question may be better answered by my colleague, Your Honor. It may be, and we will try that on them. Thank you, Counsel. And we took you over. You didn't take yourself over. We'll give you four to two minutes on replies. Thank you, Your Honor. Ms... Mr. De Alejo? It's Ms., Your Honor. Ms. De Alejo. I wrote that down and I was so focused on pronouncing your last name that I forgot the title in the front, Ms. Alejo. Thank you, Your Honor. Ms. Alexandra De Alejo with Gray Robinson. My co-counsel is also on the line. However, given the time limit, Mr. Roy Colbert will not be arguing and he is muted. We represent the Appellee Dish Network, LLC. And I'm going to kind of jump in and address some of the issues that were raised by the court. With respect to the settlement agreement and that specific provision, the record reflects that prior to the parties entering into that settlement agreement, Dish represented two plaintiffs' counsel that we could not prevent a third party from submitting an application. So all parties were aware at the time of execution that Dish would not be able to stop somebody attempting to input Ms. De Monte's private information or a portion of her private information with Dish. This was further affirmed by Ms. De Monte's testimony, which is also part of the record, where she said she did not believe Dish could stop, you know, an identity thief from attempting to get Dish services. With the settlement agreement, Your Honor, what Dish agreed to do was flag the social security number, and there's no dispute there. Dish flagged the social security number, and as soon as it obtained the social security number, once a credit inquiry was pulled in the sense of an online application where only four digits, it immediately stopped any further processing of that application. And again, that is undisputed. Your Honor, while I understand the court, you know, discusses the provision itself is impossible to comply with, Dish complied to the extent it flagged the social security number, and any time it received the full social security number, it stopped that application. And it's undisputed that no accounts have been opened in the name of Ms. De Monte or a fraudster using her social security number since the settlement agreement. Counsel. Yes, Your Honor. Were you in on the negotiation of this settlement agreement? I was not, Your Honor. Well, somebody was. And why would anyone agree to an obligation and make a promise that was impossible to carry out? Your Honor, I do not have an answer for you. I don't have an answer for you. I was not part of the settlement negotiations, so I don't know the reasoning behind them. Understanding with my client and the discussions with my client, the purpose was we were trying to stop the opening of an account. The first case involved fraudulent accounts. Therefore, you know, the intention was to identify what information we could of Ms. De Monte to ensure that no future accounts were ever opened. Okay. Counsel, this is Robert Lugg. At what point would your client be on notice that the person who's applying is, in fact, the plaintiff here and a credit report shouldn't be run? Is it seven digits on the social security number that are identical? We would need the full social security number. If so, let me ask you this. If they had used, if the fraudster who was applying online had used the plaintiff's actual name, actual address, actual phone number, actual date of birth, and actual four digits, you're telling me that would not put you on notice to not get a credit report at that point? Your Honor, the system itself does not, is an automated... I understand the system. That's not my question. My question, you have to show a legitimate business purpose for obtaining, for having been furnished this consumer report under the statute, correct? Correct, Your Honor. How is that a legitimate purpose? If you know, if this person has said to you and sued you and says, I don't want services, there's a fraudster using my information, I affirmatively don't want services, you've signed an agreement with her that you're going to check for services for her, and she has given, they have given, you are given all the information other than the last four. You're telling me that would not, your client at that point would know, would still be allowed as a legitimate purpose to get a consumer report? Your Honor, in, so breaking out apart the agreement with the FCRA, we would have to, I tend to agree with you, Your Honor. What we put in place was to flag the Social Security. That was... Right, that would have met the settlement agreement. That's not what I'm talking about. I'm talking about FCRA, which is claims one and two. You would agree with me that that would not be sufficient under FCRA. At that point, you would have known or you had enough information that it would not have been a legitimate business purpose to have, to have been furnished the report, right? Your Honor, I wouldn't say that we would have knowledge at that point, it is an automated system. We don't know who's applying. It would be negligent. It would be negligent. I think the court could find, yes, Your Honor, that there's potentially a negligent violation. Okay. All right. So let's take some things out. So let's say you have the complete first name, date of birth, and last four, but wrong address, wrong telephone number. Where does that leave us? Again, Your Honor, we don't know who's submitting the information. It's an automated system. So that already it's been established by both plaintiff and the court that the plaintiff is not or the appellant is not taking issue with DISH's system as it is. I understand. It's no one saying that the system itself is wrong, but you still have an obligation under the statute to only request consumer reports for legitimate business purposes. Correct. So my question to you is, would it be a legitimate business purpose to request a consumer report if you had the right name, right address, and telephone number, but wrong date of birth, and only the last four? Your Honor, the only legitimate business purpose we have is to verify the information of who's submitting it to us. At the point it's being submitted, it's not run by a department. It's fully automated. Therefore, all I can say is, because we have no knowledge, we're there to verify the information. But the question is, are you negligent in doing so? And is there a legitimate business purpose in you doing so? That's the question. And is there one, if you know for a fact the plaintiff does not want services, and you've signed an agreement stating she doesn't want services? Right, Your Honor. But at the time of inputting the information, we are verifying that. We don't know who it is at the time. So we have a legitimate business purpose to verify that. You know who it is. You know who the person is. They've given you your name, address, telephone number, a date of birth, in this case the wrong one, and the last four digits of a Social Security number. You know who the person is. The question is, is that enough information to tell you at that point, we should not be digging around this person's consumer report because this person doesn't want our services? Or is it a legitimate purpose for me to see if this person is, in fact, the same exact person who has sued us? Your Honor, with respect to identity theft, it's deemed a legitimate purpose to verify the person and to protect an individual from identity theft. So when you have an individual- But you're relying on Bickley. And Bickley says that in the first instance that's true. And I think everyone would agree with you. And I think I even got your opposing counsel to agree with you that that's a legitimate purpose. But that's not where we are. We're at the point when you know that a specific person has sued you for using the information and that you entered an agreement with and you know does not want your services. And you've even flagged that person and you have a file with that person's information. So if that person uses some significant combination of that very information that you have in your files, isn't that not a legitimate purpose? No, Your Honor. I disagree because the settlement agreement only did not preclude us from running a credit check. Part of- I'm not talking about this- Counsel, I'm not talking about this- Counsel, I'm not talking about the settlement agreement. I'm talking about FICRA. Understood, Your Honor. And what my explanation was, because there was no preclusion to run a credit check, DISH at the time that any application comes in has a right to verify that information. No matter what. It does not know. Well, they can contract out and say you can't run a credit report. But DISH has no knowledge at the point of the application what that information is. I understand. Is it a legitimate business purpose in every single instance, even where DISH knows that four times previously someone used that exact same information and DISH was told it was fraudulent in order to get services? So time number five is okay. How about time number six and time number seven? Let's say this exact same thing happened again with the exact same information that was given tomorrow after we've had this appeal, had this litigation, had the settlement agreement, and it's happened for four or five years in a row. Would that be legitimate? Your Honor, DISH is not the one who is inputting the information in the beginning. This is being triggered by an outside third party, an identity theft. I understand that. But at some point, isn't DISH on notice to not get someone that's asking for and retrieving and obtaining and using someone's consumer report is not a legitimate business purpose at some point? Your Honor, based on your hypothetical, I can't state whether it wouldn't be a legitimate business purpose, at least we know it's not willful. We're only talking about negligence because, again, it allows somebody to verify. Part of the procedure is to protect somebody from identity theft. If we've determined that there's not an issue in itself, that the process itself is not violating the FCRA, then a legitimate business purpose is to verify and identify identity theft. Well, let me ask you this. Let's flip things for a moment. Is the settlement agreement enough of a legitimate purpose to give you, in this instance, that the DISH plaintiff to check where some combination of her information is used to make sure that it is this person, that they're trying to get the information of this person and to prevent it from happening? In other words, does the settlement agreement give you a legitimate business purpose at that point? The settlement agreement does not dictate the legitimate business purpose because the settlement agreement does not preclude us from utilizing a credit inquiry to... I understand, and I tend to agree with you, as it sounds like my other panel members do, too. But my question is, does the fact that you've agreed to flag this person's social security number not a legitimate reason to pull her credit report to make sure that the last four digits aren't, in fact, this plaintiff's, to make sure that she is not activated in an account? I respectfully disagree with that. I think the case law that holds that you can contract out of a legitimate business purpose, those cases deal with an express agreement between the parties that the credit will not be pulled. That is what the case law that I'm aware of, and that would be the Scott case and the Eulig case that are cited in the briefing, where the party specifically and specific to the transaction at issue stated, you cannot pull my credit. You are not authorized to mow my credit. The credit was pulled, and the court in both those cases decided that they contracted out of a legitimate business purpose. Counsel, you recognize that Judge Lark's question would help you. He's suggesting that, does the settlement agreement provide you with the legitimate business purpose? Thank you. Oh, I thought, I'm sorry. I misunderstood that. Yes, Your Honor. It does in the sense, as I was explaining, that one of our goals here is to assist and protect Ms. DeMonte from identity theft by allowing somebody to open up an account. Because only the four digits were used, and because people can manipulate information, the best way to protect Ms. DeMonte was to flag her full social. Therefore, any manipulation of any of the material, any of her personal information provided to DISH in whatever form, once we obtained a full social, whether it be initially in the application or in the central online after a credit inquiry, we would be able to protect her and serve the purpose. Therefore, I do believe we do have one. Yes, Your Honor. Your position is, consistent with the settlement agreement and with FCRA, you could do this if someone submitted those four social security and varying combinations of identifying information each day for a full year. You could order, and the machine would order, 365 credit reports, and she would be deemed on her credit score 365 times, and that doesn't violate FCRA or the settlement agreement. Your Honor, again, it would be dependent on how the information, what information was submitted, because there's other checks and balances that DISH has that could potentially preclude a credit inquiry. But if they didn't preclude it, then that's fine. She has no cause of action. That's just her bad luck. She can continue to call Equifax or Experian or whoever it is and go through the appeal process. Your Honor, again, it's without having the specifics, it's hard to say if that would, if it would occur every day. But in this sense, we removed those credit inquiries. With respect to the April… You did one of them. You didn't do all of them. Your Honor, we removed all credit inquiries. After the lawsuit or before on the first one? With respect to the first one, Your Honor, we were unaware that it occurred until we were notified and the lawsuit was filed. And therefore, we removed it once the lawsuit was filed. With respect to the ones in January 2018, the one, we removed it within seven days of notification. We got pinged internally that somebody attempted using her social for four digits. But once we got the full social, the death, the master death list got pinged. And we internally and on our own accord went and deleted it and then advised Ms. DeMonte through her counsel that this occurred. So, she would be… So, you take care of it, but she gets notified 365 times in a row. And I assume is told on the letters not to worry about it. I mean, that wouldn't violate the settlement agreement article in your position, as I understand it. Your Honor, if somebody submitted the full social, then we would… No, no, no. …nothing would get drawn. No, that's not my hypothetical. You may not like the hypothetical, and lawyers often don't, but that was not my hypothetical. And I think I know the answer to that. Now, let me ask you this. What are we to do with everything being under seal? Your Honor, we found it under seal basically, again, to protect DISH's process with respect to the identity theft issue. We did not want the specific procedures of DISH to be published and therefore allow identity hackers, such as the ones in this case, to utilize the procedures to try to go around that. And that's what I suspected. That's an entirely legitimate purpose. But how are we to write an opinion in this case? Particularly if we want to address an issue and think that it's worthy of… the reasoning or holding is worthy of being made into law with a… I'm not sure I understand how that's going to work. Your Honor, to be honest, I don't know either. You know, I just know that, you know, we are just cognizant that a lot of people are subject to identity theft, and we would, you know, prefer that the procedures and checks and balances we have in place to identify and verify consumers and their eligibility would not be put out there for people to try to work around them. I guess, and this is not directed at you in any way, but rather the situation, and I'm accepting as entirely legitimate your explanation for sealing it. I guess we could issue the judicial opinion equivalent of those little thumbs up and thumbs down that you see in your text messages and not make any law and not publish the opinion. And the next time it comes up, which it very well may in a different party in front of the different panels, they won't have any guidance of what we did and why. If either side has any additional thoughts on the sealing problem and wants to file a supplemental letter about it with a copy to the other side, we wouldn't reject that opportunity to respond. You may both be on the same page on it. If anybody knows about the need to avoid identity theft, I imagine Ms. DeMonte would be that person or one of the people who did. Having said that, we will now hear from her her remaining time. Two minutes, I believe, Ms. Steinecross. Thank you, Your Honor. DISH cannot rely on hypothetical manipulations of information to give it the right to violate the Fair Credit Reporting Act when the same correct information has been used online in every application that's ever been submitted using Ms. DeMonte's information. As noted by Judge Carnes and also addressed by Judge Luck, the concern here is that DISH has put in place no procedure to comply with the Fair Credit Reporting Act. The record shows that. Under DISH's current procedure, it could access Ms. DeMonte's private credit report every single day for 365 days, and DISH would still say that's not a violation. But that's not the law. The legitimate business need permissible purpose is an exception. It's not the rule. Further, as this court addressed whether the settlement agreement gave DISH some legitimate business purpose outside of the exhaustive list of permissible purposes under 15 U.S.C. subsection 1681bA3, this court held in Pintos that litigation is not a permissible purpose under the Fair Credit Reporting Act because it didn't show up in that list. Similarly here, the avoidance of litigation by breaching a settlement agreement is not a permissible purpose under the Fair Credit Reporting Act. And we rest on our briefs with respect to the issues of damages. And unless your honors have any further questions, we request that summary judgment be reversed and remanded back to the trial court. Thank you, counsel. We'll take that case under submission.